No. 24-3198

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

ADEWUMI ABIOYE,
*Petitioner-Appellee,*

v.

WARDEN MOSHANNON VALLEY PROCESSING CENTER, et al.,
*Respondents-Appellants.*

On Appeal from the United States District Court
for the Western District of Pennsylvania
No. 23-cv-00251 (Hon. Christopher B. Brown)

## RESPONSE BRIEF OF PETITIONER-APPELLEE

Daniel Melo
CAPITAL AREA IMMIGRANTS'
  RIGHTS (CAIR) COALITION
1025 Connecticut Ave NW Ste. 701
Washington, DC 20036

William T. Sharon
Nicole L. Masiello
ARNOLD & PORTER
  KAYE SCHOLER LLP
255 West 55th Street
New York, NY 10019

R. Stanton Jones
Andrew T. Tutt
Casey Corcoran
Katie Weng
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., NW
  Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com

*Counsel for Petitioner-Appellee Adewumi Abioye*

## Oral Argument Requested

May 9, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ................................................................................................1

STATEMENT OF THE ISSUES...........................................................................3

STATEMENT OF RELATED CASES ..................................................................3

STATEMENT OF THE CASE...............................................................................4

SUMMARY OF ARGUMENT .............................................................................7

STANDARD OF REVIEW ................................................................................10

ARGUMENT .....................................................................................................10

I.    EAJA Clearly and Unambiguously Applies to Habeas Actions
Challenging Civil Detention ...................................................................11

II.   The District Court Did Not Abuse Its Discretion In Concluding That
the Government's Position Was Not "Substantially Justified" .......................11

    A.   The *German Santos* Factors Overwhelmingly Favored Mr.
Abioye ...........................................................................................12

    B.   The District Court Reasonably Determined that the
Government's Position Was Not "Substantially Justified" .....................21

    C.   The Government's Counterarguments Are Meritless .............................22

CONCLUSION...................................................................................................27

CERTIFICATE OF BAR MEMBERSHIP...........................................................28

CERTIFICATE OF SERVICE ...........................................................................29

CERTIFICATE OF COMPLIANCE...................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Abela v. Gustafson*,
888 F.2d 1258 (9th Cir. 1989) ..................................................................10

*Bah v. Doll*,
2018 WL 5829668 (M.D. Pa. Nov. 7, 2018) ................................... 15-16

*Bah v. Doll*,
2018 WL 6733959 (M.D. Pa. Oct. 16, 2018) ................................. 15-16

*Baptista v. Lowe*,
2024 WL 3410587 (M.D. Pa. May 7, 2024).............................................20

*Baptista v. Lowe*,
2024 WL 3410600 (M.D. Pa. Apr. 30, 2024).........................................20

*Buleishvili v. Hoover*,
2021 WL 674226 (M.D. Pa. Feb. 22, 2021) .........................................19

*Buwaneswaran v. Ashcroft*,
60 F. App'x 890 (3d Cir. 2003) ...........................................................17

*Chavez-Alvarez v. Warden York Cnty. Prison*,
783 F.3d 469 (3d Cir. 2015) .......................... 2, 8, 12, 13, 15, 16, 17, 18, 19, 22

*Clarke v. Doll*,
481 F. Supp. 3d 394 ............................................................................18

*Com. of Mass. v. United States*,
333 U.S. 611 (1948).............................................................................25

*Cruz v. Comm'r of Soc. Sec.*,
630 F.3d 321 (3d Cir. 2010) .............................................................11, 22

*Davydov v. Doll*,
2020 WL 969618 (M.D. Pa. Feb. 28, 2020).........................................15, 16, 18

*Demore v. Kim*,
538 U.S. 510 (2003)............................................................................14, 26

*Diop v. ICE/Homeland Sec.*,
  656 F.3d 221 (3d Cir. 2011) ................................................................ 12-13, 14, 15

*Gayle v. Warden Monmouth Cnty. Corr Inst.*,
  12 F.4th 321 (3d Cir. 2021) ................................................................15

*German Santos v. Warden Pike Cnty. Corr. Facility*,
  965 F.3d 203 (3d Cir. 2020) ..............................2, 3, 8, 10, 13-19, 20, 21, 23-25

*Ghanem v. Warden Essex Cnty. Corr. Facility*,
  2022 WL 574624 (3d Cir. Feb. 25, 2022) ................................................17

*Grigoryan v. Jamison*,
  2025 WL 1257693 (E.D. Pa. Apr. 30, 2025) ............................................19

*Hanover Potato Prods., Inc. v. Shalala*,
  989 F.2d 123 (3d Cir. 1993) ................................................................11

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) ................................................................13, 26

*Johnson v. Gonzales*,
  416 F.3d 205 (3d Cir. 2005) ................................................................8, 11, 12

*Kleinauskaite v. Doll*,
  2019 WL 3302236 (M.D. Pa. July 23, 2019) ............................................15

*Laurel Gardens, LLC v. Mckenna*,
  948 F.3d 105 (3d Cir. 2020) ................................................................10, 24

*Malede v. Lowe*,
  2022 WL 3084304 (M.D. Pa. Aug. 3, 2022) ............................................20

*Miller v. Mannion*,
  2022 WL 3044650 (M.D. Pa. July 11, 2022) ............................................19

*Morgan v. Perry*,
  142 F.3d 670 (3d Cir. 1998) ................................................................11, 12, 22, 23

*Newmark v. Principi*,
  283 F.3d 172 (3d Cir. 2002) ................................................................10

*United States ex rel. Petratos v. Genentech Inc.*,
   855 F.3d 481 (3d Cir. 2017) ...................................................................24

*Pierce v. Underwood*,
   487 U.S. 552 (1988)..............................................................................2

*Quintero v. Garland*,
   998 F.3d 612 (4th Cir. 2021) .................................................................17

*Rad v. Lowe*,
   2021 WL 1392067 (M.D. Pa. Apr. 13, 2021)..........................................18

*Rauda v. Jennings*,
   55 F.4th 773 (9th Cir. 2022) ..................................................................17

*Rivas v. Oddo*,
   2023 WL 4361140 (W.D. Pa. June 27, 2023) .............................15, 19

*Sassmannshausen v. Doll*,
   2017 WL 4324836 (M.D. Pa. Aug. 10, 2017) ......................................16

*Sassmannshausen v. Doll*,
   2017 WL 4310177 (M.D. Pa. Sept. 28, 2017).....................................16

*Tracey M.S. v. Decker*,
   2020 WL 2316559 (D.N.J. May 11, 2020)............................................15

## Statutes

8 U.S.C. § 1226(c) ............................................................9, 13, 14, 15

28 U.S.C. § 2412(d)(1)(A) ....................................................1, 3, 6, 7

## Other Authorities

Ted Hesson, et. al., *Biden vowed to reform immigration detention.
   Instead, private prisons benefited*, Reuters (Aug. 7, 2023),
   http://bit.ly/4m8tSsm .........................................................................20

## STATEMENT CONCERNING ORAL ARGUMENT

Appellee believes oral argument will materially assist the Court in adjudicating the issues raise in this appeal.

# INTRODUCTION

The government held Appellee Adewumi Abioye in civil immigration detention for eighteen months. While detained, Mr. Abioye was forced to wear used undergarments, threatened with solitary confinement, and could not leave his "pod" for more than a few hours per day. Not once during that time did the government provide him with so much as a bond *hearing* to determine his eligibility for release. When Mr. Abioye was finally able to obtain *pro bono* counsel and contest his removability, the Fourth Circuit entered a stay. At that point, however, his detention was poised to continue indefinitely, potentially for years to come. Yet the government *still* did not provide him with a bond hearing.

Ultimately, Mr. Abioye was forced to file a habeas petition requesting a hearing. After eighteen months of civil detention, the district court ordered the government to give Mr. Abioye a hearing, determining that continued custody without a hearing was unreasonable under the Due Process Clause. The district court also held that the government's failure to provide a bond hearing sooner was not "substantially justified," and it therefore awarded Mr. Abioye fees under the Equal Access to Justice Act ("EAJA"), which permits courts to award fees to a party that prevails against the Government in "any civil action" unless the government's conduct was "substantially justified." 28 U.S.C. § 2412(d)(1)(A).

1

On appeal from the district court's EAJA decision, the government now raises two issues: (1) that EAJA does not apply to habeas actions and (2) that its position was substantially justified. The government is wrong twice over. Habeas actions are clearly "civil actions" under EAJA for all the reasons set forth Appellee's Brief in *Michelin v. Warden Moshannon Valley*, No. 24-2990, Dkt. No. 36 (3d Cir.) and incorporated herein by reference.

As to the government's alternative argument, its position was utterly unjustified. "Substantially justified" means "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The government's position here came nowhere close. The government left Mr. Abioye to languish in detention for more than a year-and-a-half notwithstanding this Circuit's clear and repeated guidance that, for a habeas petitioner in Mr. Abioye's circumstances, detention beyond one year is unreasonable. *See German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210-12 (3d Cir. 2020); *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015).

That should make this an open-and-shut case. But the government theorizes that because this Circuit has declined to adopt a "presumption" of unreasonableness or a "bright line rule," it has a permission slip to hold immigrants in civil detention for at least sixteen months—or however long it takes for a court to order a bond hearing—before its refusal to provide a bond hearing lacks "substantial

2

justification." The rule the government seeks is a presumption that detention for *any* duration without a bond hearing is "substantially justified."

The government's reductive view of "reasonableness" contravenes this Court's precedent. Applying the factors this Court articulated in *German Santos*, no reasonable person could believe that Mr. Abioye's continued detention without a bond hearing for sixteen months was justified, let alone "substantially" so. The government's contrary position was unreasonable, and the district court correctly awarded Mr. Abioye just over $18 thousand in fees. This Court should affirm.

## STATEMENT OF THE ISSUES

1. Whether a habeas action that challenges civil detention in connection with civil proceedings qualifies as "any civil action" under 28 U.S.C. § 2412(d)(1)(A).

2. Whether the government's decision to detain of Mr. Abioye without a bond hearing for 18 months was not "substantially justified" under 28 U.S.C. § 2412(d)(1)(A).

## STATEMENT OF RELATED CASES

This case has not been before this Court previously.

Counsel is aware of the following related cases pending in this Court and elsewhere: *Michelin v. Warden Moshannon Valley*, No. 24-2990 (3d Cir.);[1] *Daley v. Choate, et al.*, No. 24-1191 (10th Cir.).

**STATEMENT OF THE CASE**

Adewumi Abioye is a Nigerian citizen that entered the United States in 2018 on a B2 visitor's visa. App'x 5. His visa expired and he stayed in the country. App'x 5. Two years later, he pled guilty to conspiracy to commit wire fraud. App'x 5. Another two years after that, the district court handling his case sentenced him to twenty-seven months of criminal imprisonment, with credit for time served in the interim. App'x 5.

On May 20, 2022, a week after Mr. Abioye's sentencing, Immigration and Customs Enforcement (ICE) served him with a Notice to Appear. App'x 5. The notice stated that he was removable because of his conspiracy conviction and because he had overstayed his visa. App'x 5. He was transferred to ICE's civil custody on the day he was released from criminal custody. App'x 5.

ICE civilly detained Mr. Abioye for the next eighteen months, roughly five of which were in Pike County Correctional Facility, and the remaining fifteen of which were in Moshannon Valley Processing Center. App'x 5-7. He experienced

---

[1] This Court *sua sponte* consolidated this case with *Michelin* for disposition only. *See* Order at Doc. 12.

horrendous conditions at both locations. His clothing consisted of used underwear, holey shoes, and broken glasses. App'x 122-23. His fellow inmates included those imprisoned for violent or sexual crimes. App'x 123-24. The guards were often either cruel or unable to help him. App'x 123.

While in ICE custody, Mr. Abioye applied for relief from removal under the Convention Against Torture. After a brief continuance so that he could obtain counsel, he appeared for a hearing before the immigration court. App'x 25. The immigration judge ordered him removed. App'x 25. He appealed that decision, and the Board of Immigration Appeals denied his appeal. App'x 25. He appealed the BIA's decision to the Fourth Circuit, App'x 25, which stayed his removal pending resolution of his appeal, App'x 162. It also placed his appeal in abeyance. Order, *Abioye v. Bondi*, No. 23-1663 (4th Cir. Dec. 10, 2024.), Dkt. 50.

In all that time, the government has continuously refused to grant Mr. Abioye a bond hearing to determine whether he may be released from custody. Sixteen months into his detention, Mr. Abioye filed a petition for a writ of habeas corpus with the United States District Court for the Western District of Pennsylvania challenging his continued detention without a bond hearing. App'x 93-116. The court granted his petition and ordered an immigration judge to conduct an individualized bond hearing. *See* App'x 33.

Mr. Abioye appeared for a bond hearing on December 11, 2023. App'x 7. The immigration judge found that the government could not justify his continued civil detention and ordered his release. *See* App'x 7, 56. Mr. Abioye moved to Silver Springs, Maryland, to live closer to his young son and pursue a career in Information Technology. *See* App'x 7, 124-25.

Mr. Abioye sought attorney's fees under EAJA shortly after his release. App'x 39-49. He argued that he fell within the clear language of EAJA entitling him to fees "in any civil action," that the government's position had not been "substantially justified," and that no "special circumstances [made] an award unjust." 28 U.S.C. § 2412(d)(1)(A).

The district court agreed and granted Mr. Abioye's motion. The court noted that although the Third Circuit had not squarely "addressed whether a civil habeas action challenging detention is a 'civil action' under the EAJA," it has "adjudicated motions for attorneys' fees in immigration habeas cases without questioning whether such cases call outside the ambit of the EAJA." App'x 9. The district court also acknowledged that other appellate and district courts "are divided" on whether immigration habeas case proceedings are "civil actions" under EAJA, but the court ultimately sided with "the sound reasoning of the Second and Ninth Circuits" and determined that they are. App'x 9-10. The court observed that "immigration proceedings themselves are civil in nature," and that "the only type of 'civil actions'

6

that are outside [EAJA's] ambit . . . are those 'sounding in tort.'" App'x 10 (quoting 28 U.S.C. § 2412(d)(1)(A). If Congress had wanted to exclude other types of civil actions from EAJA, the court reasoned, it would have said so. App'x 10-11.

Having concluded the Mr. Abioye prevailed in a civil action, the court awarded him attorneys' fees. *See* App'x 11-20. In reaching its decision, it rejected the government's theory that it had been "substantially justified" in denying Mr. Abioye a bond hearing for sixteen months. App'x 12-17. The court explained that the government should have been "on notice" of the clear and consistent precedent entitling Mr. Abioye to a hearing. App'x 15. Although the government knew that "detention . . . for approximately a year or more without an individualized bond hearing" is unreasonable in cases like Mr. Abioye's, it had nevertheless opposed his request for a hearing nearly a year-and-a-half into his detention. App'x 17. That position thus had no "reasonable basis" in law or fact, and the court awarded Mr. Abioye just over $18,000 in attorneys' fees. App'x 17-18.

## SUMMARY OF ARGUMENT

I. EAJA unambiguously applies to habeas actions challenging civil detention, as every tool of statutory construction establishes. Mr. Abioye incorporates by reference the arguments set forth in Appellee's Brief in *Michelin v. Moshannon Valley Correctional Center*, No. 24-2990, Dkt. No.36 (3d Cir.).

II. The government was not "substantially justified" in its position that Mr. Abioye's sixteen-month detention without a bond hearing was reasonable.

A. This Court's key decisions in this area, particularly *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210-12 (3d Cir. 2020), and *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 478 (3d Cir. 2015), show that the government's position was not substantially justified. Substantial justification turns on whether a "reasonable person" would view the government's position as justified. *Johnson v. Gonzales*, 416 F.3d 205, 210 (3d Cir. 2005). Under that standard, no reasonable person would view Mr. Abioye's prolonged detention without a bond hearing here as justified. All of the relevant *German Santos* factors weighed heavily against the government in this case, making its position utterly baseless.

B. The government's attempt to justify its conduct here is unpersuasive.

1. The government attacks the reasoning of the decision below, arguing that the district court erred by supposedly failing to conduct a more holistic analysis and purportedly concluding that detention beyond a certain threshold is not substantially justified. That argument lacks merit. The district court was not required to carefully reiterate every aspect of the record that supported its EAJA decision. And in any event, this Court may affirm the fee award on any ground supported by the record.

Here, the government's position—that Mr. Abioye was not entitled to a bond hearing for sixteen months—was indefensible.

2. The government argues that the district court's EAJA decision "gloss[ed] over its own prior [implicit] holding" that the question whether to release Mr. Abioye presented a "close call." Br. 48. That argument is wrong for two reasons. First, the district court said in its habeas opinion only that the *duration* element was a "close call"; but even if the duration element was close, Mr. Abioye's entitlement to a hearing was not. Second, the durational element of the *German Santos* standard in fact was *not* a close call. And the district court was not required to treat its prior statement on that question as some kind of precedent or law of the case. The district court acted well within its discretion in determining, on the basis of the whole record, that the government's position in refusing to give Mr. Abioye a bond hearing was not substantially justified.

3. The government also makes a halfhearted effort to defend its conduct on the grounds that "the Supreme Court could reasonably agree with the Government" that bond hearings are not constitutionally required in the context of 8 U.S.C. § 1226(c) detention. Br. 42, 44, 45. But that argument is foreclosed by precedent.

Because EAJA encompasses Mr. Abioye's habeas claim, and the government's position was not substantially justified, this Court should affirm.

## STANDARD OF REVIEW

A district court's interpretation of EAJA presents a legal question subject to this Court's plenary review. *Newmark v. Principi*, 283 F.3d 172, 174 (3d Cir. 2002). A district court's award of attorney fees under the EAJA is reviewed for abuse of discretion. *Id*.

The court may affirm the district court's decision on any ground that finds support in the record. *Abela v. Gustafson*, 888 F.2d 1258, 1265 (9th Cir. 1989); *see Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 116 (3d Cir. 2020) ("[W]e may affirm on any ground supported by the record, and an appellee may urge affirmance on such a ground even if the district court overlooked it or it involves an attack on the district court's reasoning.").

## ARGUMENT

The judgment of the district court should be affirmed. EAJA applies to civil actions for all the reasons set forth in the Appellee's brief in *Michelin*. And the government's litigating position in this case was not substantially justified. Applying the four-factor test from *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210-12 (3d Cir. 2020), in light of this Court's precedents, no reasonable person would view the government's litigation position in this case as justified. The Court should affirm.

**I.    EAJA Clearly and Unambiguously Applies to Habeas Actions Challenging Civil Detention**

EAJA applies to habeas actions. Mr. Abioye hereby incorporates the arguments in Mr. Michelin's brief filed in *Michelin v. Warden Moshannon Valley*, No. 24-2990, Dkt. No.36 (3d Cir.), pursuant to this Court's order encouraging the parties "to file consolidated briefs or adopt portions by reference." Dkt. No. 12.

**II.   The District Court Did Not Abuse Its Discretion In Concluding That the Government's Position Was Not "Substantially Justified"**

The government's position in this case was manifestly unjustified. Under EAJA, "[t]he burden of demonstrating substantial justification for its position rests squarely on the government." *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993). "To satisfy this burden and defeat a prevailing party's application for fees, the government must establish that there is substantial justification for its position by demonstrating (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Cruz v. Comm'r of Soc. Sec.*, 630 F.3d 321, 324 (3d Cir. 2010) (quotation marks omitted). "The government's position under the EAJA includes not only the position taken in the litigation but the agency position that made the litigation necessary in the first place." *Morgan v. Perry*, 142 F.3d 670, 684 (3d Cir. 1998) (quotation marks omitted); *accord Johnson v. Gonzales*, 416 F.3d 205, 210 (3d Cir. 2005) ("[I]n immigration

cases, the Government must meet the substantially justified test twice"). "Thus, unless the government's pre-litigation and litigation positions have a reasonable basis in both law and fact, the government's position is not substantially justified." *Morgan*, 142 F.3d at 684.

The facts of Mr. Abioye's case make unmistakably clear that he should have received a bond hearing, at the latest, after he had been in detention for around twelve months. The government's decision to keep holding him for another six months beyond the one-year mark was patently unreasonable under this Court's cases. And the government was not remotely justified in pressing a contrary position in litigation.

## A.    The *German Santos* Factors Overwhelmingly Favored Mr. Abioye

Holding Mr. Abioye beyond one year was plainly unreasonable under this Court's precedent. To be sure, "the Government has authority to detain any [noncitizen] during removal proceedings"; but "there are limits to this power." *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 472 (3d Cir. 2015). "[D]ue process requires . . . that, at a certain point—which may differ case by case— the burden to a[ noncitizen]'s liberty outweighs a mere presumption that the [noncitizen] will flee and/or is dangerous." *Id.* at 474-75 (cleaned up).

This Circuit has long held that the Fifth Amendment's Due Process Clause limits prolonged immigration detention without bond. *See Diop v. ICE/Homeland*

*Sec.*, 656 F.3d 221, 233 (3d Cir. 2011); *Chavez-Alvarez*, 783 F.3d at 475-78. Following the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), which declined to read 8 U.S.C. § 1226(c) as automatically requiring bond hearings for all non-citizens after six months of detention, this Court in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210, 213-14 (3d Cir. 2020) reaffirmed the reasoning in *Diop* and *Chavez-Alvarez* and held that when detention becomes unreasonably prolonged, due process requires a bond hearing where the government bears the burden of proving by clear and convincing evidence that continued detention is necessary to prevent flight or danger to the community.

This Court in *German Santos* articulated "a nonexhaustive list of four factors to consider in assessing whether a[ noncitizen]'s detention has grown unreasonable." *Id.* at 210-11 (quoting *Chavez-Alvarez*, 783 F.3d at 474). Those factors are: (1) the duration of the detention; (2) whether the detention is likely to continue; (3) the reasons for any delay; and (4) whether the conditions of confinement meaningfully differ from criminal punishment. The *German Santos* factors indisputably favored Mr. Abioye in this case, making the government's decision to hold him for sixteen months and force him to sue for a bond hearing utterly unreasonable.

**1.** The first *German Santos* factor—the duration of detention— overwhelmingly favored Mr. Abioye. "The most important factor is the duration of detention." *Id.* at 211. While this Court has "decline[d] to establish a universal point

13

at which detention will always be considered unreasonable," the Supreme Court has "emphasized that mandatory detention pursuant to § 1226(c) lasts only for a 'very limited time' in the vast majority of cases." *Diop*, 656 F.3d at 233-34 (quoting *Demore v. Kim*, 538 U.S. 510, 529 n.12 (2003)). "In fact," such detention "lasts roughly a month and a half in the vast majority of cases . . . and about five months in the minority of cases in which a[ noncitizen] chooses to appeal." *Id.* at 234 (quoting *Demore*, 538 U.S. at 530). So while "the reasonableness of any given detention pursuant to § 1226(c) is a function of whether it is necessary to fulfill the purpose of the statute, . . . those purposes [are] fulfilled in the vast majority of cases within a month and a half, and five months at the maximum." *Id.* (citing *Demore*, 538 U.S. at 530). As a result, "the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past those thresholds." *Id.* To put a finer point on it: "detention becomes more and more suspect after five months." *German Santos*, 965 F.3d at 211 (quotation marks omitted).

In *Diop*, for example, this Court held that "there [could] be no question that [a] detention for nearly three years without further inquiry into whether it was necessary to ensure [the detainee's] appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable and, therefore, a violation of the Due Process Clause." 656 F.3d at 234-35. And in *Chavez-Alvarez*,

the Court observed that "when [the petitioner] had been detained for over a year and a half, [the Court] would have been hard-pressed to conclude that such a detention is reasonable." 783 F.3d at 477 n.11; *see German Santos*, 965 F.3d at 211 ("[I]n *Chavez-Alvarez*, we held that a lawful permanent resident's detention became unreasonable sometime between six months and one year."); *cf. Gayle v. Warden Monmouth Cnty. Corr Inst.*, 12 F.4th 321, 332 (3d Cir. 2021) (noting that the point when "detention has become 'unreasonably long' . . . under [Third Circuit] precedents[] may be six months or more").[2]

Applying this Circuit's law, courts have repeatedly found detention periods between eleven and sixteen months to be unreasonably prolonged. *See, e.g.*, *Rivas v. Oddo*, 2023 WL 4361140, at *2 (W.D. Pa. June 27, 2023) (fifteen months at Moshannon); *Tracey M.S. v. Decker*, 2020 WL 2316559, at *6 (D.N.J. May 11, 2020) (collecting cases finding unreasonableness at eleven to sixteen months); *Davydov v. Doll*, 2020 WL 969618, at *4 (M.D. Pa. Feb. 28, 2020) (fourteen months); *Kleinauskaite v. Doll*, 2019 WL 3302236, at *6 (M.D. Pa. July 23, 2019) (twelve months); *Bah v. Doll*, 2018 WL 6733959, at *7 (M.D. Pa. Oct. 16, 2018) (fourteen months); *report and recommendation adopted*, 2018 WL 5829668 (M.D.

---

[2] The Supreme Court overruled the statutory dispositions in *Diop* and *Chavez-Alvarez*, but this Court remains "bound by *Diop* and *Chavez-Alvarez*'s decision that § 1226(c) is unconstitutional when applied to detain a[ noncitizen] unreasonably long without a bond hearing." *German Santos*, 965 F.3d at 210.

Pa. Nov. 7, 2018); *Sassmannshausen v. Doll*, 2017 WL 4324836, at \*1, \*3 (M.D. Pa. Aug. 10, 2017) (thirteen months), *report and recommendation adopted*, 2017 WL 4310177 (M.D. Pa. Sept. 28, 2017).

Mr. Abioye's detention lasted longer than the detention in each of these cases, and well beyond the five-month timeframe after which detention becomes "more and more suspect." *German Santos*, 965 F.3d at 211; *see Chavez-Alvarez*, 783 F.3d at 474.

**2.** The second *German Santos* factor, which focuses on the likelihood the detention will continue, also overwhelmingly favored Mr. Abioye. If a petitioner's detention is "unlikely to end soon," continued detention without a bond hearing grows more suspect. *German Santos*, 965 F.3d at 211. This Court and district courts within this Circuit have repeatedly held that this factor favors a petitioner whose immigration case is currently on appeal at the BIA or in federal circuit court. *See id.* at 212 (noting that petitioner would "stay in prison as long as it takes the [BIA] to issue its decision"); *Chavez-Alvarez*, 783 F.3d at 477-78 (concluding that the parties "could have reasonably predicted that Chavez-Alvarez's appeal would take a substantial amount of time, making his already length detention considerably longer"); *see also Davydov*, 2020 WL 969618, at \*5 (noting that the undefined period of further detention due to a pending petition for review favored granting habeas relief).

Like other petitioners who have prevailed under the *German Santos* factors, it was "reasonably predict[able] that [Mr. Abioye's] appeal [would] take a substantial amount of time, making his already lengthy detention considerably longer." *Chavez-Alvarez*, 783 F.3d at 477-78; *see also German Santos*, 965 F.3d at 212. In fact, there was a uniquely high likelihood Mr. Abioye's detention would continue for much longer given the pending appeal at the Fourth Circuit and the accompanying stay of removal. By the time Mr. Abioye's detention reached sixteen months, it was clear his detention could easily last over two more years. *See, e.g.*, *Quintero v. Garland*, 998 F.3d 612 (4th Cir. 2021) (petitioner detained for over four years while Convention Against Torture claim adjudicated); *Rauda v. Jennings*, 55 F.4th 773 (9th Cir. 2022) (same); *Ghanem v. Warden Essex Cnty. Corr. Facility*, 2022 WL 574624 (3d Cir. Feb. 25, 2022) (petitioner detained for over five years while Convention Against Torture claim adjudicated); *Buwaneswaran v. Ashcroft*, 60 F. App'x 890, 891 (3d Cir. 2003) (taking over four years to adjudicate petitioner's Convention Against Torture claim).

**3.** The third *German Santos* factor—whether either party caused unnecessary delay by "carelessness or bad faith"—also favored Mr. Abioye (or was neutral). *German Santos*, 965 F.3d at 211. Courts cannot "hold a[] [non-citizen]'s good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings," *id.*; nor does seeking reasonable continuances or

17

briefing extensions amount to bad faith, *see Rad v. Lowe*, 2021 WL 1392067, at *4 (M.D. Pa. Apr. 13, 2021); *Davydov*, 2020 WL 969618, at *5. This factor often favors neither side. Yet detention "can still grow unreasonable even if the Government handles removal proceedings reasonably." *German Santos*, 965 F.3d at 211. The Middle District of Pennsylvania has repeatedly found detention unreasonable even when the government does not act in bad faith. *See, e.g.*, *Clarke v. Doll*, 481 F. Supp. 3d 394, 397-98; *Davydov*, 2020 WL 969618, at *5.

Mr. Abioye did nothing more than diligently litigate his case and seek all the remedies available to him. To be sure, he sought a brief continuance to obtain counsel and file applications for relief, and he filed a viable and timely appeal of his removal order. But that cannot be "[held] against him" because to do so would "effectively punish [him] for pursuing applicable legal remedies." *German Santos*, 965 F.3d at 211 (quotation marks omitted); *see also Rad*, 2021 WL 1392067, at *4; *Davydov*, 2020 WL 969618, at *4. He certainly was not "merely gaming the system to delay [his] removal." *Chavez-Alvarez*, 783 F.3d at 474. Thus, the third factor either favored Mr. Abioye or was neutral in the reasonableness analysis.

**4.** The fourth *German Santos* factor—the conditions of confinement—also favored Mr. Abioye. This factor supports a finding of unreasonableness when the conditions of confinement are not "meaningfully different" from criminal punishment. *German Santos*, 965 F.3d at 211 (citing *Chavez-Alvarez*, 783 F.3d at

478) (cleaned up). Courts within this Circuit regularly conclude that the conditions at Pike and Moshannon—the facilities where Mr. Abioye was detained—meet that standard. *See id.* at 213 (finding that ICE detention at Pike resembles criminal custody); *Rivas*, 2023 WL 4361140 at *2 (same finding for Moshannon); *cf. Buleishvili v. Hoover*, 2021 WL 674226, at *4 (M.D. Pa. Feb. 22, 2021) (same finding for Clinton County Correctional Facility in Pennsylvania).

As "several district court judges in this circuit have found[,] . . . the conditions at Moshannon are 'penal in character.'" *Grigoryan v. Jamison*, 2025 WL 1257693, at *5 (E.D. Pa. Apr. 30, 2025) (listing cases). Moshannon Valley Processing Center was "once a private facility [called Moshannon Valley Correctional Center] that contracted with the Federal Bureau of Prisons to house federal prisoners," and, as of September 2021, was "repurposed as an immigration detention facility." *Miller v. Mannion*, 2022 WL 3044650, at *1 n.1 (M.D. Pa. July 11, 2022). As one court explained in assessing the fourth *German Santos* factor, "the physical facility at Moshannon . . . is unlikely to have changed much since it expressly was a criminal detention center." *Rivas*, 2023 WL 4361140, at *2.

Mr. Abioye's experience was no exception. When he filed his habeas petition, the private company that owns and manages Moshannon operated the facility on behalf ICE in largely the same way it had operated on behalf of the Bureau of Prisons, including keeping many of the same people employed at the facility,

requiring visitors to pass through secure checkpoints, and maintaining cells for solitary confinement.[3]

Pike is no better. It houses both civilly detained immigrants, and criminal inmates serving time for serious violent or sexual crimes. App'x 123. That dual-population means that the facility operates like a high-security prison. App'x 123. As this Court has already held—and as multiple district court's have since agreed— "[d]espite its civil label," civil detention at Pike can be "indistinguishable from criminal punishment." *German Santos*, 965 F.3d at 211; *see, e.g.*, *Baptista v. Lowe*, 2024 WL 3410600, at *3 (M.D. Pa. Apr. 30, 2024), *report and recommendation adopted*, 2024 WL 3410587 (M.D. Pa. May 7, 2024); *Malede v. Lowe*, 2022 WL 3084304, at *7 (M.D. Pa. Aug. 3, 2022).

Mr. Abioye described some of the conditions if his confinement in vivid detail, including:

- His conditions in "immigration detention [were] worse than when [he] was in federal [criminal] custody";

- He was forced to remain in his "pod" except for several hours each day;

- He "was given used clothing, including used undergarments, to wear;

- He was unable to replace his broken glasses and decrepit shoes; and

---

[3] *See* Ted Hesson, et. al., *Biden vowed to reform immigration detention. Instead, private prisons benefited*, Reuters (Aug. 7, 2023), http://bit.ly/4m8tSsm.

- Guards were violent toward detainees, "cruel," and "constantly" threatened Mr. Abioye and others with solitary confinement.

App'x 30-31.

**B.     The District Court Reasonably Determined that the Government's Position Was Not "Substantially Justified"**

Given the circumstances of Mr. Abioye's detention, the government lacked any justification for forcing him to litigate a habeas petition just to obtain a bond hearing. In granting Mr. Abioye's petition, the district court applied an analysis similar to that discussed above. It found that the first and second *German Santos* factors—duration of detention and the likelihood of continued detention—both favored Mr. Abioye. App'x 28-29. It found that the third factor did not add to the calculus because both sides had acted reasonably in the underlying immigration proceedings. App'x 29-30. And although the district court concluded that the conditions at Pike and Moshannon were not *indistinguishable* from criminal detention, it recognized that Mr. Abioye's conditions were abysmal. App'x 30-32.

In awarding Mr. Abioye $18 thousand in attorneys' fees, the district court held that the government failed to meet its burden to prove the reasonableness of its "position that Abioye had not met the four-factor test articulated in *German Santos*." App'x 13. Although the court did not repeat its analysis of each factor, it elaborated on "the most important factor," *German Santos*, 965 F.3d at 211, emphasizing that "Abioye was detained for over sixteen months without an individualized bond

21

hearing, more than the year-long detention in *Chavez-Alvarez*," App'x 17. Having already found with "certainty . . . that additional delay of an undefined duration [would] continue to accrue," App'x 29, and that Mr. Abioye was not responsible for prior delays, App'x 30, the court concluded that the government was not "reasonable" in opposing even his simple request for a *hearing*, App'x 17. Because the government opposed Mr. Abioye's request "[d]espite knowing" that his continued detention without a hearing "raise[d] due process concerns," the government had not carried its burden to show that its "litigation position was substantially justified." App'x 17.

Based on a "review of the record and the findings that the district court made along with those that are implicit in that court's decision," the district court's conclusion was not an abuse of discretion. *Morgan*, 142 F.3d at 683. To the contrary, the record leaves nothing close to "a definite and firm conviction that the court committed a clear error of judgment in the conclusion reached upon a weighing of the relevant factors." *Cruz*, 630 F.3d at 324 (cleaned up).

## C. The Government's Counterarguments Are Meritless

The government argues that (1) the district court committed legal errors in its EAJA order, (2) its decision granting Mr. Abioye's habeas petition tacitly recognized that the government's position was reasonable, and (3) the Supreme

Court could find its litigating position reasonable because it might ultimately disagree with this Court's precedents. All of those arguments fail.

**1.** In its primary argument, the government parses the district court's EAJA opinion in an effort to accuse the court of legal error. It argues that the EAJA opinion should have said more about *German Santos* and elaborated on why the government's position was not substantially justified under that standard. *See* Br. 46-48. According to the government, the district court imposed "a bright-line reasonableness threshold" that "effectively handcuff[s] the Government from defending against these as-applied challenges." Br. 44, 45.

But the district court's EAJA order did not need to retread over the relevant "record and the findings" from the court's "decision on the merits," because all of that was "implicit in [its EAJA] decision." *Morgan*, 142 F.3d at 683. Indeed, in many cases, "the factual underpinnings of the EAJA claim are not set forth in the district court's opinion [regarding] fees and costs, but in its decision on the merits." *Id.* In reviewing for abuse of discretion, this Court can "proceed with [its] analysis based upon [its] review of the record and the findings that the district court made along with those that are implicit in that court's decision." *Id.* The government may disagree with the court's application of the law to the facts, but it cannot manufacture a *legal* error by flyspecking the district court's EAJA order.

Anyway, even if this Court "disagree[s] with [a] District Court's reasoning, [it] may affirm its judgment on any ground supported by the record." *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 489 (3d Cir. 2017); *see Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 116 (3d Cir. 2020) (this Court may affirm on any ground "even if the district court overlooked it or it involves an attack on the district court's reasoning"). The government's position in this case—that it could hold Mr. Abioye for sixteen months without providing him a bond hearing— blatantly contravened this Court's precedent. No amount of parsing of the district court's opinion changes that underlying fact, and this Court can affirm the district court's judgment even if it does not adopt its precise reasoning.

**2.** The government also claims that the district court's underlying habeas order tacitly deemed its position substantially justified. *See* Br. 46-48 (arguing "[t]he court should not be allowed to simply gloss over its own prior holding"). Because "one [*German Santos*] factor was neutral, another favored the Government, and two favored Abioye," the government reasons, its position must have been reasonable all along. Br. 47. That is wrong.

First, the government ignores that the factors do not all carry the same weight; the two factors that favored Mr. Abioye are by far the most important. *See German Santos*, 965 F.3d at 211. The government also overlooks that the factors are not binary, but rather exist on a continuum. Despite concluding that Mr. Abioye's

24

conditions of confinement could be distinguished from prison, for example, the court certainly recognized that those conditions were exceptionally harsh. App'x 30-32. To be sure, the district court in its habeas order stated that the duration element was "a close call," App'x 29, but in truth it was not—as the district court later correctly recognized in its order granting fees, App'x 17; *see Com. of Mass. v. United States*, 333 U.S. 611, 639-40 (1948) (Jackson, J., dissenting) (there is no reason a judge should be "consciously wrong today" merely because he "was unconsciously wrong yesterday").

Finally, government ignores that by the time the government's detention has become so prolonged that a court is required to *order* the government to hold a bond hearing, the government's conduct has long since become unreasonable. An order requiring the government to hold a bond hearing because the government engaged in unconstitutionally prolonged detention does not tacitly endorse the reasonableness of the government's conduct simply because one factor—the conditions of confinement—conceivably could be viewed as favoring the government (especially given the conditions at Pike and Moshannon).

**3.** Finally, the government attempts to defend its position on the theory that the Supreme Court may *eventually* hold that the Due Process Clause does not require bond hearings. *See* Br. 43-45 ("[I]n light of its prior hesitation [in *Demore* and *Jennings*], the Supreme Court could reasonably agree with the Government."). That

argument is foreclosed. If the government wished to attack the lawfulness of the district court's order granting a bond hearing in this case, it had a means of doing so: It could have appealed in the underlying case. But on an EAJA fees motion, whether the government's position was substantially justified must be measured against the law that applied at the time, and this Court's precedent unambiguously showed that, on the facts of Mr. Abioye's case, a bond hearing was required.

\*     \*     \*

The government's deliberate choice to hold Mr. Abioye for sixteen months without a bond hearing was utterly unjustified. The district court held as much when it ordered the government to provide Mr. Abioye with a bond hearing shortly after he brought suit to vindicate his rights. Mr. Abioye never should have been required to sue in the first place. Cases like Mr. Abioye's arise repeatedly in this Circuit because the government has steadfastly refused to acquiesce in this Court's controlling due process precedent and voluntarily provide immigrants with the bond hearings the Constitution requires. This sort of corrosive unjustified government conduct is precisely what EAJA was enacted to counteract. The district court did not abuse its discretion in awarding Mr. Abioye fees in this case.

**CONCLUSION**

This Court should affirm the decision below.


Dated: May 9, 2025                    Respectfully submitted,

                                      /s/ Andrew Tutt

Daniel Melo                           R. Stanton Jones
CAPITAL AREA IMMIGRANTS'              Andrew T. Tutt
  RIGHTS (CAIR) COALITION             Casey Corcoran
1025 Connecticut Ave NW Ste. 701      Katie Weng
Washington, DC 20036                  ARNOLD & PORTER
                                        KAYE SCHOLER LLP
                                      601 Massachusetts Ave., NW
William T. Sharon                     Washington, DC 20001
Nicole L. Masiello                    (202) 942-5000
ARNOLD & PORTER                       andrew.tutt@arnoldporter.com
  KAYE SCHOLER LLP
255 West 55th Street
New York, NY 10019


*Counsel for Petitioner-Appellee Adewumi Abioye*

# CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I am a member of the Bar of this Court.


Dated: May 9, 2025                    */s/ Andrew Tutt*
                                                Andrew T. Tutt

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2025, I electronically filed the foregoing document and accompanying materials with the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: May 9, 2025          */s/ Andrew Tutt*
                                         Andrew T. Tutt

# CERTIFICATE OF COMPLIANCE

1.      The foregoing brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) because the brief contains 6,025 words.

2.      The brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Times New Roman 14-point font.

3.      In accordance with Third Circuit Local Appellate Rule 31.1(c), the text of Appellee's Brief, as electronically filed on May 9, 2025, is identical to the text of the Brief to be submitted in paper copy.

4.      In accordance with Third Circuit Local Appellate Rule 31.1(c), Appellee's Brief, as electronically filed on May 9, 2025, was scanned with a virus detection program, namely Microsoft Defender (Version 1.399.35.0), and no virus was detected.

Dated: May 9, 2025

*/s/ Andrew Tutt*
Andrew T. Tutt